## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MEGHAN PIPER JOHNSON, REBECCA
PARDUE and RODENELLIE PLUVIOSE, on
behalf of themselves and all other persons
similarly situated,

       *Plaintiffs,*

    v.

BODY & POLE, INC. and KYRA JOHANNESEN,

       *Defendants.*

Case No. 22-CV-00857

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A FAIR LABOR STANDARDS ACT COLLECTIVE ACTION AND AUTHORIZE THE ISSUANCE OF NOTICE

GRANOVSKY & SUNDARESH PLLC

Benjamin Rudolph Delson
Alexander Granovsky
48 Wall Street, 11th Fl.
New York, NY 10005
delson@g-s-law.com
ag@g-s-law.com
(646) 524-6001

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS .....................................................................................3

ARGUMENT ..................................................................................................11

1.   The Two-Step Process of Certifying an FLSA Collective Action ........13

2.   Conditional Certification is Appropriate, No Matter How the Work-Study Program is Considered ....................................................................15

   a.   Conditional Certification is Appropriate here; Glatt is Inapposite because the Work-Study Program is not an Internship or Vocational Training Program .................................16

   b.   Even under Glatt, Conditional Certification is Appropriate ....18

3.   The Proposed Notice is Fair and Accurate ................................................22

4.   The Proposed Discovery Is Essential to Ensure Timely Notice ..........23

5.   Sending Expedited Notice to Similarly Situated Employees Fulfills the FLSA's Broad Remedial Purposes........................................................24

CONCLUSION ................................................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Braunstein v. Eastern Photographic Laboratories, Inc.,*
   600 F.2d 335 (2d Cir. 1979)...............................................................22

*Desir v. NYU Langone Health Sys.*, No. 19-Civ.-8144,
   2020 U.S. Dist. LEXIS 194837 (S.D.N.Y., Oct. 19, 2020) *adopted by*
   2020 U.S. Dist. LEXIS 240779, 2020 WL 7630623 (S.D.N.Y., Dec.
   22, 2020)...........................................................................13, 20, 23

*Foster v. Food Emporium*, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. 2000).................24

*Fraticelli v. MSG Holdings, L.P.*, No. 13-Civ.-6518,
   2018 U.S. Dist. LEXIS 110271, 2018 WL 3217410 (S.D.N.Y. July 2,
   2018)..............................................................................................21

*Gani v. Guardian Serv. Indus.*,
   2011 U.S. Dist. LEXIS 4353, 2011 WL 167844 (S.D.N.Y., June 3,
   2010)..............................................................................................14

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F. 3d 528 (2nd Cir. 2016) ..............passim

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ......................passim

*Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165 (1989)*...........................3, 12, 22, 23

*In re Penthouse Exec. Club Comp. Litig.*, No. 10-Civ.-1145,
   2010 U.S. Dist. LEXIS 114743, 2012 WL 4340255 (S.D.N.Y. Oct.
   27, 2010).......................................................................................16

*Klein v. Octagon, Inc.*, No. 14-Civ-6770,
   2015 U.S. Dist. LEXIS 136410, 2015 WL 5821629 (S.D.N.Y. Sept.
   30, 2015).......................................................................................21

*Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)...............................12

*Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y., May 7,
   2001)..............................................................................................14

**STATUTES**

Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ...............................................passim

## PRELIMINARY STATEMENT

This lawsuit is about a company that, instead of paying its employees wages, paid them in barter.

Defendant Body & Pole, Inc. ("Body & Pole") is a boutique fitness studio in Manhattan owned by Defendant Kyra Johannesen. It sells classes in pole dancing and aerial fitness to the general public; it also sells its customers mentorships in dance, and the opportunity to put on their own dance "showcases." Body & Pole has a sizeable operation, requiring hundreds of hours a week of janitorial, maintenance and secretarial labor. But, in violation of the Fair Labor Standards Act, 29 U.S.C. 201 *et seq*. ("FLSA"), Body & Pole does not pay any wages to most of its janitorial, maintenance and secretarial staff.

Instead, Body & Pole has created a "Work-Study Program" for some of its staff. The participating staff, called "Work-Studies," do the overwhelming majority of the janitorial, maintenance and secretarial work for Body & Pole. They are subject to a rigid set of rules: they all sign a commitment letter to work for 12 months, they all adhere to the same 150-page handbook of policies and practices, they all work two shifts a week—and none of them are paid any wages. Rather, they are compensated in kind. For the length of their Work-Study year, they are allowed to take for free the same classes that members of the general public must pay money to attend.

In other words, the Work-Study program is a barter arrangement. The Work-Studies give Body & Pole about fifteen hours a week of labor; Body & Pole

gives the Work-Studies a few hundred dollars a month worth of free services. But, contrary to the FLSA, no wages are paid to Work-Studies.

On February 1, 2022, the Plaintiffs Meghan Piper Johnson, Rebecca Pardue and Rodenellie Pluviose (the "Named Plaintiffs") filed this lawsuit alleging violations of the FLSA and New York Labor Law ("NYLL"). In the first four months since it was filed, nineteen former Work-Studies have learned of the lawsuit and filed consents to opt-in. <u>There are now a total of twenty-two party plaintiffs</u>.

By this motion, Plaintiffs respectfully request that this Court conditionally certify a collective action under the FLSA and permit the circulation of notice to the remaining Work-Studies with potential claims under the FLSA: all individuals engaged by Defendants as Work-Studies at any time from February 1, 2019 to the present (the "Collective Action Members").

To prevail on a motion for conditional certification, Plaintiffs must show that the Named Plaintiffs and the Collective Action Members are "similarly situated," which is to say, subject to a common policy that violated the FLSA. Here, the common policy was Defendants' decision not to pay their Work-Studies any wages. That policy is undisputed, and is described in detail in the Complaint and the affidavits of five former Work Studies.

Plaintiffs seek authorization to proceed as a collective action under Section 216(b) of the FLSA on behalf of several dozen potential Collective Action Members, all of whom worked at the same location in Manhattan, and all of whom were subject to identical policies. Plaintiffs request that the Court order notice to be sent

to all potential Collective Action Members so as to provide them with the opportunity to "opt-in," pursuant to *Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165 (1989)*.

Therefore, Plaintiffs respectfully request that the Court issue an order: (1) authorizing this matter to proceed as a collective action; (2) authorizing mailing and e-mailing of the proposed notice to all potential Collective Action Members by Plaintiffs (and tolling the limitations period on FLSA claims from the filing of this motion through the opt-in deadline); and (3) requiring Defendants to post the notice and opt-in consent forms prominently in their facility on 27th Street in Manhattan, and to produce a computer-readable data file containing the names, addresses, e-mail addresses and telephone numbers of all such potential Collective Action Members so that notice may be implemented.

## STATEMENT OF FACTS

Body & Pole is a boutique fitness company in Manhattan that offers classes in pole dancing and aerial fitness to the general public.[1]  Body & Pole also offers its clients the opportunity, for a fee, to participate "showcases," where clients can gain experience performing pole and aerial dancing for an audience, or to be matched with pole-dancing "mentors," or to join a "pre-professional program" with further training opportunities and benefits.[2]

---

[1]     *See* Plaintiffs' Collective and Class Action Complaint with Jury Demand (the "Complaint"), ¶¶1, 27.  The Complaint is attached as Exhibit 1 to the Declaration of Benjamin Rudolph Delson dated May 31, 2022 in support of this motion ("Delson Decl.").

[2]     *Id.* ¶¶65, 67.

Body & Pole has both paid and unpaid staff.[3]  It refers to its unpaid staff as "Work-Studies," who are employed through what Body & Pole calls its "Work-Study Program."[4]

The Work-Study Program is a barter arrangement. Work-Studies are expected to work at Body & Pole twice a week, with each shift lasting about 7 or 8 hours.[5]  None of the Work-Studies are paid any wages for their work.[6]  Rather, they are allowed free access to the same classes, mentorship programs and showcases that Body & Pole otherwise would charge them money to attend.[7]

Body & Pole offers every Work Study the same bargain and expects every Work-Study to adhere to the same policies and practices.[8]  Every Work-Study signs the same "Commitment Letter" in order to join the Work-Study program.[9]  Every Work-Study is trained according to the same 150-plus page manual.[10]  Every Work-

---

[3]      *Id.* ¶¶30-31.

[4]      *Id.* ¶¶31-32.

[5]      Complaint ¶42; Declaration of Emily Lea Berry dated March 2, 2022 ("Berry Decl.") ¶6; Declaration of Meghan Piper Johnson dated February 28, 2022 ("Johnson Decl.") ¶6; Declaration of Rachel Musselwhite dated March 4, 2022 ("Musselwhite Decl.") ¶¶3, 7; Declaration of Rebecca Pardue dated February 24, 2022 ("Pardue Decl.") ¶6; Declaration of Rodenellie Pluviose dated February 28, 2022 ("Pluviose Decl.) ¶6.  The Berry, Johnson, Musselwhite, Pardue and Pluviose declarations are attached as Exhibits 4, 5, 6, 7 and 8 to the Delson Declaration.

[6]      Complaint ¶52; Berry Decl. ¶1; Johnson Decl. ¶1; Musselwhite Decl. ¶1; Pardue Decl. ¶1, 10; Pluviose Decl. ¶1.

[7]      Complaint ¶¶54-55, 60, 62-67; Berry Decl. ¶¶1, 10-11, 17; Johnson Decl. ¶¶6, 10-11; Musselwhite Decl. ¶¶3, 11-12; Pardue Decl. ¶¶10-11; Pluviose Decl. ¶¶10-11.

[8]      Berry Decl. ¶21; Johnson Decl. ¶20; Musselwhite Decl. ¶20; Pardue Decl. ¶22; Pluviose Decl. ¶19.

[9]      Delson Decl. Ex. 10 (the Work-Study commitment letter); Complaint ¶38;  Berry Decl. ¶5; Johnson Decl. ¶5; Musselwhite Decl. ¶6; Pardue Decl. ¶5; Pluviose Decl. ¶5.

[10]     Delson Decl. Ex. 11 (the Work-Study manual); Complaint ¶41.

Study is subject to the disciplinary procedures if they fail in any of their obligations.[11]

Every Work-Study is required to work the same number of shifts per week, at the same location, reporting to the same managerial chain.[12] During their work hours they all perform identical work: setting up and taking down rigging, cleaning studios and bathrooms, doing laundry, and sitting at the front desk to assist paying clients.[13] In exchange, the Work-Studies all receive the same benefits: free access to classes, free assignment to a mentor, and the free opportunity to participate in a showcase.[14] In violation of the Fair Labor Standards Act, the Work-Studies receive no wages.

Body & Pole claims that the Work-Study Program is a valid unpaid internship or unpaid vocational training program under the strictures articulated in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F. 3d 528 (2nd Cir. 2016). The Court need not consider that *Glatt* defense today. But if and when the Court does consider the *Glatt* defense, the Court will find itself asking the same factual question with respect to every Work-Study who becomes a plaintiff: "Who was the primary beneficiary of this Work-Study relationship, the Work-Study, or Body and Pole?"

---

[11]     *See, e.g.,* Ex. 10 at page 2 (explaining escalating discipline for Work-Studies who are late); Berry Decl. ¶20; Johnson Decl. ¶19; Musselwhite Decl. ¶19; Pardue Decl. ¶21; Pluviose Decl. ¶18.

[12]     Complaint ¶35; Berry Decl. ¶21; Johnson Decl. ¶20; Musselwhite Decl. ¶20; Pardue Decl. ¶22; Pluviose Decl. ¶19.

[13]     Complaint ¶¶44-49; Berry Decl. ¶¶9, 21; Johnson Decl. ¶9, 20; Musselwhite Decl. ¶¶9, 20; Pardue Decl. ¶¶9, 22; Pluviose Decl. ¶¶9, 19.

[14]     Complaint ¶¶35, 54-66; Berry Decl. ¶21; Johnson Decl. ¶20; Musselwhite Decl. ¶20; Pardue Decl. ¶22; Pluviose Decl. ¶19.

*Glatt* enumerates seven non-exhaustive factors to consider in answering the question of who is the "primary beneficiary" of an intern's work. 811 F. 3d at 536-37. Because every Work-Study was subject to nearly identical working conditions at Body & Pole, the analysis of those seven factors will be nearly identical for every Work-Study:

***Glatt* Factor 1: *Body & Pole and the Work-Studies understood that the Work-Studies were all being compensated for their work (just not with wages):*** The Work-Studies all understood that, in exchange for working fifteen hours a week for Body & Pole, they would be compensated with free access of Body & Pole classes. Indeed, it was free access to Body & Pole classes and mentorships that made the Work-Study program worthwhile for the Work-Studies.[15]

Significantly, when Work-Studies did work beyond their two shifts, Body & Pole paid them additional (non-wage) compensation. Body & Pole issued company scrip, called "BP Bucks," which it used to compensate Work-Studies. It paid Work-Studies at the rate of 15 BP Bucks per hour, with each BP Buck redeemable for $1 of merchandise or services sold by Body & Pole.[16]

Also significantly, Body & Pole felt entitled to discipline Work-Studies by withholding compensation. If Body & Pole believed a Work-Study needed to be disciplined, Body & Pole could "suspend" that Work-Study: the Work-Study was

---

[15] Complaint ¶79; Berry Decl. ¶¶13, 14; Musselwhite Decl. ¶14, 15; Pardue Decl. ¶¶13-15; Pluviose Decl. ¶13.

[16] Complaint ¶54(c); Berry Decl. ¶¶15.

required to keep working his or her shifts, but prohibited from taking classes, or was required to pay for any classes he or she took during the suspension.[17]

***Glatt Factor 2: None of the Work-Studies derived meaningful educational or vocational benefits from their hours of unpaid work:*** Every Work-Study had a unique reason for entering into the Work-Study program: some aspired to be better pole or aerial dancers; others wanted to expand their artistic community; others wanted to become dance instructors, or to produce their own dance performances.

But none of them expected to derive much meaningful educational or vocational benefit from the fifteen hours a week of unpaid work they did for Body & Pole. Their work hours consisted of menial tasks like cleaning toilets, mopping floors, doing laundry, and sitting at a desk to assist paying customers.[18] This was not the training pole-dancing or aerial dancing performers, producers or instructors would receive in an educational or vocational setting.[19]

Nor was the Work-Study Program really meant to provide such training— because the Work-Study Program was not an internship. It was a barter exchange that allowed Work-Studies to take more classes and enjoy more services at Body & Pole than they otherwise might afford.

---

[17] Complaint ¶59(a); Ex. 10 at p. 2 (explaining discipline procedures with respect to attendance); Berry Decl. ¶20; Johnson Decl. ¶19; Musselwhite Decl. ¶19; Pardue Decl. ¶21; Pluviose Decl. ¶18.

[18] Complaint ¶¶44-51; Berry Decl. ¶9; Johnson Decl. ¶9; Musselwhite Decl. ¶10; Pardue Decl. ¶9; Pluviose Decl. ¶9.

[19] Complaint ¶80.

There is an exception, and it proves the point. During their approximately fifteen hours of work per week, the Work-Studies were responsible for putting up and taking down the "rigging," that is, the hoops, silks and poles that were used by Body & Pole's paying clientele.[20] Some Work-Studies felt that putting up and taking down rigging was a valuable skill to learn; but equally, they felt that skill was mastered with a few weeks, and that once they had mastered that skill, there was nothing left to learn on the job.[21] And why was the Work-Study program twelve months long, if there was nothing to be learned on the job after a few weeks? Because the Work-Study Program was not about continuously teaching valuable skills; it was about continuously providing unpaid labor to Body & Pole. It was not an internship program; it was a barter arrangement.

*Glatt Factors 3 & 4: The Work-Study Program was not tied to anyone's formal education, nor tethered to any academic calendar:* Few of the Work-Studies were enrolled in any academic program.[22] Plaintiffs are not aware of any Work-Study who received any academic credit for their time as a Work-Study; to the contrary, Plaintiffs are aware of at least some Work-Studies dropped out of school, or delayed school, at least in part due to their Work-Study

---

[20]    *Id.* ¶47.

[21]    Johnson Decl. ¶9; Musselwhite Decl. ¶10.

[22]    Complaint ¶¶34, 81; Berry Decl. ¶¶4, 21; Johnson Decl. ¶¶16, 20; Musselwhite Decl. ¶¶5, 20; Pardue Decl. ¶18-22; Pluviose Decl. ¶¶15, 19.

duties.[23]  All Work-Studies were required to commit to fifteen hours of work per week for fifty-two consecutive weeks, without regard to any academic calendar.[24]

The Work-Study Program was not about contributing to the Work-Studies' educations; it was about continuously providing unpaid labor to Body & Pole.

***Glatt Factor 5:  The Work-Study Program was unlimited in duration:*** The Work-Study Program was very flexible in duration.  While the commitment letters contemplated a twelve-month commitment, Work-Studies were often encouraged or permitted to work for longer periods of time.[25]  Again, the Work-Study Program was not about continuously teaching valuable skills; it was about continuously providing free labor to Body & Pole.

***Glatt Factor 6:  The labor of unpaid Work-Studies displaced significant amounts of paid labor:***  Body & Pole's unpaid Work-Study program is central to its business model. During a typical week, Body & Pole's Work-Studies together complete about 32 shifts.[26]  Because each such shift lasting about 7 or 7.5 or 8 hours,[27] during a typical week Body & Pole receives about 240 hours of uncompensated labor from its Work-Studies, the equivalent of five or six full-time employees.

The janitorial, secretarial and maintenance labor performed by the Work-Studies is the kind of labor that law-abiding New York City businesses pay $15/hr.

---

[23]     Complaint ¶¶81-82; Musselwhite Decl. ¶¶5-6.

[24]     Complaint ¶¶40, 81-82; Berry Decl. ¶21; Musselwhite Decl. ¶5; Pardue Decl. ¶22; Pluviose Decl. ¶21.

[25]     Complaint ¶¶38-39, 83;  Johnson Decl. ¶5.

[26]     *See* Delson Decl. Ex. 9 (a sample work schedule).

to hire.[28]  By employing the Work-Studies to perform that labor instead, Body &

Pole removed from its balance sheets some $187,200 per year in wages (or $15/hr x

240 hrs/week x 52 weeks/yr.)  Because Body & Pole did not have to pay payroll taxes

on those wages, and because it did not have to provide benefits, its savings likely

approached or exceeded $250,000 per year.[29]

Body & Pole depends on Work Studies to open and close the studio each day,

to do all of the rigging work required before and after every class, and to complete

the overwhelming majority of its janitorial and front-desk work.[30]  Simply put, Body

& Pole could not continue to operate without the labor contributed by its Work-

Studies.[31]  Indeed, Body & Pole expected its Work-Studies to work unsupervised

much of the time.[32]  This was deliberate:  the Work-Study Program was created to

provide free labor to Body & Pole, not to provide education or training to the Work-

Studies during their fifteen hours of work a week.

***Glatt Factor 7:  Body & Pole and the Work-Studies all knew that being
an unpaid Work-Study was the best way to become a paid employee of Body
& Pole:***  The commitment letters signed by every Work-Study states:

> Although the work-study program can be an excellent way to become
> an instructor or operations team member at Body & Pole, it comes with
> no guarantee of employment after the program is completed. <u>However,</u>

---

[27]     *Id.*; Complaint ¶42,

[28]     Complaint ¶84(a).

[29]     *Id.* ¶86.

[30]     Berry Decl. ¶18; Johnson Decl. ¶17; Musselwhite Decl. ¶17; Pardue Decl. ¶19; Pluviose Decl.
¶16.

[31]     *Id.*

[32]     Complaint ¶ 51; Berry Decl. ¶19; Johnson Decl. ¶18; Musselwhite Decl. ¶18; Pardue Decl.
¶20; Pluviose Decl. ¶17.

> consider this program as a one year job interview since, the majority of our staff do come through our work-study program.

Ex. 10 at page 4 (emphasis added).

For those Work-Studies who aspired to become pole dance instructors, one purpose of the Work Study Program was to try to get hired by one of New York City's most prestigious studios. Body & Pole used the Work-Study program as a way to search for, and groom, future employees. The Work-Studies understood this.

_____

Even if *Glatt* is available to Body & Pole as a defense, the question *Glatt* requires the Court to ask will be the same for every plaintiff: Who was the primary beneficiary of the Work-Study relationship, this particular Work-Study, or Body and Pole?  And because the bargain offered by the Work-Study program was so nearly identical for every Work-Study, the answer to that question will be the same for every plaintiff:  Body & Pole was the primary beneficiary of the Work-Study Program.

Because that central factual questions of this case may be answered on a collective basis for all the Work-Studies, conditional certification is appropriate here.

## ARGUMENT

The FLSA authorizes a private right of action to employees to collect unpaid wages from their employers. 29 U.S.C. §216 (b). It also provides for a collective action procedure by which "similarly situated" employees are entitled to join in the

named plaintiff's wage claims by "opting-in" to the action through signing and filing a consent to join with the court. *See* 29 U.S.C. § 216 (b); *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010).

The Supreme Court has held that courts may facilitate with the issuance of a notice informing potential opt-in plaintiffs of a pending collective action. *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989). Court approval and facilitation of notice serve the goals of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.* at 172.

Here, the Court should conditionally certify an FLSA collective action and permit circulation of notice to all persons engaged by Defendants as Work Studies at any time from February 1, 2019 to the present (the "Collective Action Members").[33] The Court should also approve Plaintiff's proposed notice of lawsuit and consent to join, Delson Decl. Exs. 2 & 3, and require Defendants to post the notice in its facility on 27th Street in Manhattan, where all of its current and former Work Studies are and were employed.

Notice is appropriate because the Named Plaintiffs and the potential Collective Action Members, the other Work-Studies, are similarly situated: They all worked without pay at the same location, reporting to the same managers, subject to the same terms and conditions, as part of the same Work-Study Program. Their experiences at work were as identical as the experiences of any workers can be.

---

[33] The statutes of limitations under the Fair Labor Standards Act are two and three years; February 1, 2019 is three years prior to the filing of the Complaint.

1.      **The Two-Step Process of Certifying an FLSA Collective Action**

The Second Circuit has approved a two-step process for district courts to follow in deciding whether to certify a collective action under the FLSA. By this motion, Plaintiffs seek only to take the first step, conditional certification.  At this first step:

> the court must make an initial determination whether to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs as to whether the alleged FLSA violation occurred. Plaintiffs must make a modest factual showing that they and the potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. The Second Circuit recently explained that "party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020). Thus, "[i]f the opt-in plaintiffs are similar to the named plaintiffs in some respects material to the disposition of their claims, collective treatment may be *to that extent* appropriate, as it may *to that extent* facilitate the collective litigation of the party plaintiffs' claims." *Id.* The court considers the pleadings as well as supporting affidavits to evaluate whether the named plaintiffs have made the modest factual showing that they are similarly situated to potential opt-in plaintiffs *vis-à-vis* the defendants' unlawful employment practices.

*Desir v. NYU Langone Health Sys.*, No. 19-Civ.-8144, 2020 U.S. Dist. LEXIS 194837, at *6-*8, (S.D.N.Y., Oct. 19, 2020) (citations omitted), *adopted by* 2020 U.S. Dist. LEXIS 240779, 2020 WL 7630623 (S.D.N.Y., Dec. 22, 2020).

Thus, in order to be entitled to conditional certification, the Named Plaintiffs need only make a "modest factual showing" sufficient to demonstrate that they and other potential plaintiffs "together were victims of a common policy or plan that violated the law." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J). This requirement is satisfied if the Named Plaintiff demonstrate the existence of a "factual nexus between the [Named Plaintiffs'] situation and the situation of the other current and former [employees]." *Id.* at 262.

The allegations of the Complaint, together with the affidavits of the five former Work-Studies attached as exhibits to this motion,[34] make the requisite showing. As discussed in detail in the Statement of Facts above, the Named Plaintiffs and the Collective Action Members were all Work-Studies at Body & Pole. They all worked at the same location in Manhattan, all reported into the same managerial chain-of-command, all worked the same number of hours a week, and all performed the same set of menial tasks for Defendants. They all signed the same "Commitment" letter and were all subject to the same disciplinary structure. They all received identical non-wage compensation: free access to the classes, mentorships and showcases that the Defendants sold to the general public. But none of them received any wages.

---

[34] Courts routinely grant motions for conditional certification based on far smaller quanta of supportive evidence. *See, e.g., Gani v. Guardian Serv. Indus.*, 2011 U.S. Dist. LEXIS 4353, 2011 WL 167844 (S.D.N.Y., June 3, 2010) (complaint and one affidavit); *Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y., May 7, 2001) (one affidavit based on plaintiff's best knowledge).

The Named Plaintiffs and the Collective Action Members all assert the same claim: That under the FLSA, they are entitled to be paid the federal minimum wage for all hours they worked at Body & Pole.

Defendants have only one defense: that Body & Pole's Work-Study Program is a valid unpaid internship or unpaid vocational training program under the strictures articulated in *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F. 3d 528 (2nd Cir. 2016). As discussed below, the Court need not consider that defense today. But if and when the Court does consider it, the disposition of the Named Plaintiffs' claims and the Collective Action Members' claims will all hinge on the answer to a single, common question: Who was the primary beneficiary of Body & Pole's Work-Study Program, the Work-Studies, or Body & Pole?

Because the working conditions of all the Work-Studies were so nearly identical, that question may be answered on a collective basis. In other words, if any of the Work-Studies were entitled to be paid the minimum wage, then all of them were entitled to be paid the minimum wage. Conditional certification of the collective action is therefore appropriate here.

## 2. Conditional Certification is Appropriate, No Matter How the Work-Study Program is Considered

The Defendants will argue that, under *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F. 3d 528 (2nd Cir. 2016), conditional certification is not appropriate here. They are wrong.

*Glatt* contains two holdings relevant to this motion. First, *Glatt* articulates the test that district courts are to apply in determined whether an individual was

an employee (entitled to be paid the minimum wage under the FLSA) or an intern (and therefore not entitled to wages).  Second, *Glatt* articulates when district courts may permit the conditional certification of collective actions of purported interns.

The Court need not consider *Glatt* today.  But even if it does, conditional certification is appropriate here.

### a. Conditional Certification is Appropriate here; *Glatt* is Inapposite because the Work-Study Program is not an Internship or Vocational Training Program.

The Work-Study Program was not an internship or vocational training program; it was a barter arrangement.  Instead of paying the Work Studies for their labor with wages, Defendants paid them for their labor by giving the Work-Studies for free certain services (classes and mentorships) that Defendants otherwise would have charged the Work-Studies thousands of dollars to receive.[35]

Barter arrangements are illegal under the FLSA; employees must be paid in cash or cash equivalents. *See* 29 CFR § 531.27 ("Standing alone, sections 6 and 7 of the Act require payments of the prescribed wages, including overtime compensation, in cash or negotiable instrument payable at par."); *cf. In re Penthouse Exec. Club Comp. Litig.*, No. 10-Civ.-1145, 2010 U.S. Dist. LEXIS 114743, at *4-*14, 2012 WL 4340255 (S.D.N.Y. Oct. 27, 2010) (granting conditional certification to FLSA collective action alleging, *inter alia*, employees were paid partially in scrip). So, Plaintiffs seek conditional certification of a collective action consisting of all

---

[35]     Complaint ¶¶ 67, 86(b).

individuals employed by Defendants since February 1, 2019 under a single illegal barter arrangement: the Work-Study Program.

Plaintiffs need only make a "modest factual showing" sufficient to demonstrate that the Named Plaintiffs and the potential Collective Action Plaintiff "together were victims of a common policy or plan that violated the law." *Hoffman*, 982 F. Supp. at 261. Clearly, this standard has been met here: The Work Studies were all victims of a common policy by Defendants of not paying Work-Studies wages, but rather employing them in a barter arrangement. That policy is attested in the five affidavits attached to this motion, and the fact that Body & Pole had a policy of not paying its Work-Studies wages is not contested by the Defendants.

The Defendants will argue that Plaintiffs must meet a higher standard than the "modest factual showing," because the Work-Study Program was not an illegal barter arrangement, but rather an unpaid internship or unpaid vocational training program, as described by *Glatt*. The Court should not be fooled. The Work-Studies did not do fifteen hours a week of laundry, toilet cleaning and desk duty at Body & Pole because they thought those fifteen hours would provide them with any education or vocational training as performers or instructors.[36] The Work-Studies did those hours of menial work for Body & Pole because, outside of their work hours, they wanted access to free classes and free mentorships, etc.[37]

---

[36] Complaint ¶¶44-51; Berry Decl. ¶9; Johnson Decl. ¶9; Musselwhite Decl. ¶10; Pardue Decl. ¶9; Pluviose Decl. ¶9.

[37] Complaint ¶79; Berry Decl. ¶¶13, 14; Musselwhite Decl. ¶14, 15; Pardue Decl. ¶¶13-15; Pluviose Decl. ¶13.

As *Glatt* notes, "a central feature of the modern internship [is] the relationship between the internship and the intern's formal education," and "[t]he purpose of a bona-fide internship is to integrate classroom learning with practical skill development in a real-world setting." 811 F.3d at 537. Having bartered free access to its dance classes to obtain thousands of hours of floor-mopping, toilet-scrubbing and dull desk-work from their Work-Studies, Body & Pole should not be heard to argue that, in fact, the purpose of those thousands of hours was "practical skill development."

A wolf in sheep's clothing should be analyzed under the standards applicable to a wolf, not the standards applicable to a sheep. The Work-Study program was a barter arrangement dressed up as an internship. The standards for conditional certification in the context of internships set out in *Glatt* are therefore inapplicable. Conditional certification of the Collective Action should be granted because Plaintiffs have made the necessary "modest factual showing" of a common scheme that violated the FLSA.

### b. Even under *Glatt*, Conditional Certification is Appropriate.

In *Glatt,* the Second Circuit held that, in determining whether an intern is an "employee" for purposes of the FLSA, "the proper question is whether the intern or the employer is the primary beneficiary of the relationship." 811 F.3d at 536. *Glatt* then provides a non-exhaustive set of seven factors for district courts to consider in answering that question for any given intern. 811 F.3d at 536-37. Because the primary beneficiary test "is a highly context-specific inquiry," *id*. at 539, individualized proof may be necessary answer the question of who the primary

beneficiary of an internship is. And so in *Glatt* the Second Circuit vacated the district court's order conditionally certifying a nationwide collective action of interns. *Id.* at 540.

But the Second Circuit went out of its way to emphasize that certification of FLSA collective actions of unpaid interns is appropriate in some circumstances:

> Applying these considerations [*i.e.* non-exhaustive set of seven factors] requires weighing and balancing all of the circumstances. No one factor is dispositive and every factor need not point in the same direction for the court to conclude that the intern is not an employee entitled to the minimum wage. In addition, the factors we specify are non-exhaustive—courts may consider relevant evidence beyond the specified factors in appropriate cases. **And because the touchstone of this analysis is the "economic reality" of the relationship, a court may elect in certain cases, including cases that can proceed as collective actions, to consider evidence about an internship program as a whole rather than the experience of a specific intern.**

811 F.3d at 537 (emphasis added, citations omitted).

The sentence we emphasize here is not just dicta. After the Second Circuit published its original opinion in *Glatt* in July 2015, it amended that opinion in January 2016 specifically to add this precise sentence. *Compare* 791 F.3d 376, at 384, *with* 811 F.3d 528, at 537. In other words, the Second Circuit went out of its way to instruct district courts that certification of a collective action is appropriate

where "evidence about an internship as a whole" is instructive about the "economic reality" of the relationship between an intern and an employer.

And so, since *Glatt*, district courts have continued to conditionally certify collective actions of interns. For example, in *Desir v. NYU Langone Health Sys.*, No. 19-Civ.-8144, 2020 U.S. Dist. LEXIS 194837, at \*6-\*8, (S.D.N.Y., Oct. 19, 2020) (citations omitted), *adopted by* 2020 U.S. Dist. LEXIS 240779, 2020 WL 7630623 (S.D.N.Y., Dec. 22, 2020), the court granted conditional certification to a class of interns because the named plaintiff provided "some details, albeit brief" to show that she and the other interns "were subjected to a common scheme through their participation" in the same internship program. 2020 U.S. Dist. LEXIS 194837, at \*11-12. In *Desir*, the plaintiff alleged that the interns all worked at the same location at NYU, for the same four-month period, rotating through the same work stations. That was enough to support conditional certification.

Here, there is a far greater quantum of evidence than there was in *Desir* that Defendants perpetuated a common scheme: the Work-Studies not only all worked at the same location, reporting to the same managerial chain, and doing the same menial tasks, they all signed the same commitment letter, they were subject to the same 150-page training manual, were subject to the same discipline, and received the same compensation: free access to Body & Pole classes and mentors, etc. Thus, the economic reality of the Work-Study Program was nearly identical for every Work-Study. Indeed, as discussed in detail above, all seven of the *Glatt* factors will be subject to general evidence and general proof. This case, like *Desir,* is precisely

the kind of case where the Second Circuit anticipated certification of a collective action of interns.

To be sure, since *Glatt* some district courts have denied conditional certification of collective actions of interns. *See, e.g., Fraticelli v. MSG Holdings, L.P.*, No. 13-Civ.-6518, 2018 U.S. Dist. LEXIS 110271, 2018 WL 3217410 (S.D.N.Y. July 2, 2018); *Klein v. Octagon, Inc.*, No. 14-Civ.-6770, 2015 U.S. Dist. LEXIS 136410, 2015 WL 5821629 (S.D.N.Y. Sept. 30, 2015). But those cases are clearly distinguishable; none of them involve a group of as cohesive in their experience as the Work-Studies, who all worked identical hours, doing identical tasks, under identical agreements, for identical non-wage compensation, at a single location, reporting into a single managerial chain. *Cf. Fraticelli*, 2018 U.S. Dist. LEXIS 110271, at *16-*20 (denying conditional certification of nationwide class of 1600 interns in more than 100 different departments with a "wide disparity in [their] experiences"); *Klein v. Octagon, Inc.*, No. 14-Civ.-6770, 2015 U.S. Dist. LEXIS 136410, at *8-*10, 2015 WL 5821629 (denying conditional certification to nationwide class where "the declarations submitted by Plaintiff suggest a degree of variation in internship experiences" including differing duties and levels of training in differing departments). Put another way, in none of the cases since *Glatt* where conditional certification was denied has so much of the "economic reality" of the internship been subject to generalized proof as it will be in this case.

The evidence that will answer whether Body & Pole or the Work-Studies were the "primary beneficiary" of the Work-Study Program is evidence that is common to

every Work-Study, and that is subject to general proof.  The Work-Study Program was rigid, uniform, and created the same "economic reality" for everyone who participated.  Therefore, pursuant to *Glatt*, the Court should grant conditional certification.

### 3.    The Proposed Notice is Fair and Accurate

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche,* 493 U.S. at 170. It is well established that district courts have the power to send such a notice to potential plaintiffs. *See Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335, 335-36 (2d Cir. 1979); *Hoffman,* 982 F. Supp. at 261.

Plaintiffs' proposal for court-approved notice to the potential opt-ins, attached as Delson Decl. Ex. 2, is "timely, accurate, and informative." *Hoffman-LaRoche,* 493 U.S. at 172. It provides notice of the pendency of the action and of the opportunity to opt-in. Plaintiffs' legal claims are accurately described. Potential opt-ins are advised that Defendants will defend against the claims and that they are not required to participate. The notice provides clear instructions on how to opt in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. *See* 29 U.S.C. §215(a)(3).

Plaintiffs propose that the notice be provided through three methods. First, as an efficient way to reach all Collective Action Members currently working for Defendants as Work-Studies, the Court should order Defendants to post a notice, along with consent forms, at the one workplace where potential Collective Action

Members are employed:  Body & Pole's facility on 27th Street in Manhattan. Second, Plaintiffs propose that notice and consent forms be mailed by First Class U.S. Mail to potential Collective Action Members. Third, Plaintiffs propose that notice and consent forms be sent by e-mail to potential Collective Action Members. Those members interested in participating would be required to file their consents with the Court within two months of the mailing.

This is consistent with established practice under the FLSA. *Hoffman-LaRoche,* 493 U.S. at 172; *cf. Desir*, 2020 U.S. Dist. LEXIS 194837, at *11-19. This notice comports to all of these specific requirements, is fair and accurate and should be approved for distribution.

### 4.     The Proposed Discovery Is Essential to Ensure Timely Notice

Early discovery of mailing addresses, e-mail addresses and telephone numbers for potential opt-ins is a routine component of notice in collective actions. *Hoffman-LaRoche,* 493 U.S. at 170 ("District Court was correct to permit discovery of names and addresses ..."); *Hoffman,* 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management"); *Desir*, 2020 U.S. Dist. LEXIS 194837, at *23-*24.

With respect to the limited discovery sought in this action, Plaintiffs are not requesting unusual or extraordinary relief, but are requesting relief clearly within the discretion of this Court. Only Defendants know the names and contact information for all potential Collective Action members.  Plaintiffs respectfully

request that this Court order Defendants to provide this information in both paper and digital format to expedite the distribution of the notices.

## 5. Sending Expedited Notice to Similarly Situated Employees Fulfills the FLSA's Broad Remedial Purposes

Expedited notice is critical in FLSA actions. Unlike absent class members in a Rule 23 class action, potential class-member employees in a FLSA collective action must affirmatively opt in to be covered by the suit. 29 U.S.C. § 216(b). The statute of limitations continues to run on each individual's claim until he files his written consent form with the Court. 29 U.S.C. §§ 255, 256(b).

Notice to putative Collective Action Members should be given as soon as possible, since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." *Foster v. Food Emporium*, 2000 U.S. Dist. LEXIS 6053, *5, fn. 1 (S.D.N.Y. 2000). Thus, early distribution of a notice of pendency is crucial in an FLSA collective action.

## CONCLUSION

Plaintiffs respectfully request that the Court issue an order: (1) authorizing this matter to proceed as a collective action; (2) authorizing the mailing and e-mailing of the proposed notice to all potential Collective Action Members by Plaintiffs (and tolling the limitations period on FLSA claims from the filing of this motion through the opt-in deadline); and (3) requiring Defendants to post the notice and opt-in consent forms prominently in their facility on 27th Street in Manhattan, and to produce to Plaintiffs the names, addresses, e-mail addresses and telephone

numbers of all such potential Collective Action Members so that notice may be implemented.

Dated: New York, New York
May 31, 2022

Respectfully Submitted,

GRANOVSKY & SUNDARESH PLLC

By: */s/ Benjamin Rudolph Delson*
Benjamin Rudolph Delson
Alexander Granovsky
48 Wall Street, 11th Fl. / NY, NY 10005
delson@g-s-law.com / ag@g-s-law.com
(646) 524-6001

*Attorneys for Plaintiffs*